GREGORY L. WILDE, ESQ.
Nevada Bar No. 4417
MATTHEW K. SCHRIEVER, ESQ.
Nevada Bar No. 10745
TIFFANY & BOSCO, P.A.
212 S. Jones Blvd.
Las Vegas NV 89107
Tel (702) 258-8200
Fax (702) 258-8787
nvbk@tblaw.com

The Bank of New York Mellon FKA The Bank of New York, as trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass Through Trust 2006-HYB3, Mortgage Pass-Through Certificates, Series 2006-HYB3
*Attorney for Secured Creditor*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| In re: | Case No. BK-S-11-19760-BAM |
|---|---|
| ANGELA THERESA GLEICH, | Chapter 7 |
| Debtor. | Hearing Date: May 16, 2013<br>Hearing Time: 11:00 a.m. |

### OPPOSITION TO TRUSTEE'S MOTION TO SELL ASSETS OF THE ESTATE FREE AND CLEAR OF LIENS AND ENCUMBRANCES AND TO SURCHARGE PROCEEDS OF SALE – REAL PROPERTY

COMES NOW The Bank of New York Mellon FKA The Bank of New York, as trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass Through Trust 2006-HYB3, Mortgage Pass-Through Certificates, Series 2006-HYB3 (hereinafter "Secured Creditor"), by and through its attorney of record, the law firm of Tiffany & Bosco, P.A., and hereby files this opposition to the trustee's motion to sell assets of the estate free and clear of liens and encumbrances and to surcharge proceeds of sale from real property located at 3240 Santolina Drive, Las Vegas, NV 89135. (Doc. #28).

This Opposition is made and based upon the pleadings and papers on file herein, the Memorandum of Points and Authorities that follows, any attached exhibits, and any oral argument the court permits at the hearing of this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.
### ARGUMENT

1. **The Power Of Sale Under 11 U.S.C. §363(b) Is Constrained By 11 U.S.C. §363(f), And The Requirements Of 11 U.S.C. §363(f) For The Proposed Sale Have Not Been Satisfied**

11 U.S.C. §363(b) gives trustees the power to sell property in cases where a secured party withholds consent to a sale even though the proceeds would be sufficient to satisfy the secured creditor's claim. However, 11 U.S.C. §363 does not allow debtors or trustees to force a secured creditor to accept less than the value of the secured creditor's interest in the secured property.

The sale powers under 11 U.S.C. §363(b), on which the motion is based, are constrained by 11 U.S.C. §363(f), which states:

> **The trustee may sell property under subsection (b)** or (c) **of this section** free and clear of any interest in such property of an entity other than the estate, **only if—**
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

(Emphasis added.)

The trustee has not identified any nonbankruptcy law in his motion which would permit the sale of the subject property by the trustee free and clear of the Secured Creditor's interest. Therefore, grounds for the sale have not been shown under 11 U.S.C. §363(f)(1).

The Secured Creditor clearly has not consented, and does not consent, to the proposed sale. Even if the Secured Creditor had failed to oppose this motion, that failure could not be construed as implied consent to the sale. In *In re Roberts*, 249 B.R. 152 (W.D. Mich. 2000), the court went through an exhaustive analysis of the legislative history, prior case law, the language of both 11 U.S.C. §363(f)(2) and 363 U.S.C. §363(c)(2), as well as the juxtaposition of the terms "consents" and "after notice and a hearing" in those two (2) statutes. That court ultimately held that the consent requirement contained in 11 U.S.C. §363(f)(2) obligates the trustee to approach the lienholder and secure the lienholder's assent if the trustee wishes to sell the property free and clear of the lien. *Id.* The court further stated that such consent may not be implied by the lienholder's failure to object. *Id.* The *Roberts* court stated:

> There is no indication within Section 363 itself or its underlying legislative history that Congress intended "consents" to have any meaning other than that which it is commonly understood to have. "Consent," when used as a verb, means "to give assent or approval." *Webster's* Third New International Dictionary (unabridged) (1986).
>
> Trustee and Huntington have relied upon the legal artifice of implied consent to meet the requirement of Section 363(f)(2). However, their argument in reality is that "consents" and "fails to object" are synonymous. They are not. When a person consents to a particular action, that person has unequivocally manifested his or her affirmation of the proposed action through some discernable statement or act. In contrast, when a person fails to object to a proposed action, that person's affirmation can only be deduced from the lack of any statement or act which would suggest a contrary position. Obviously, such deductive reasoning always leaves open the possibility that the person's failure to object is attributable to some reason totally unrelated to that person's actual consent to the proposed act. For example, in the context of mass mailings to the creditor matrix, the person may have

> mistaken an important notice for junk mail and tossed it into the trash without even have read it.
>
> Had Congress substituted "does not object" for "consents" in Section 363(f)(2), there would be no question that the lienholder had the obligation to act if it did not want the property to be sold free and clear of its lien. However, the concept of consent (i.e., to give assent) imposes no such duty upon the lienholder. To the contrary, "consent" obligates the trustee to approach the lienholder and secure the lienholder's assent if the trustee wishes to sell the property free and clear of the lien.

*In re Roberts*, 249 B.R. 152 (W.D. Mich. 2000). In this matter, the debtor did not (and does not) have the Secured Creditor's consent or assent to sale the property free and clear of liens. The motion was filed prematurely because consent was not obtained. Because consent was not obtained, the court cannot grant the motion even if it were unopposed. Therefore, grounds for the sale have not been shown under 11 U.S.C. §363(f)(2).

The proposed sale price of $420,000.00 is not greater than the aggregate value of all liens on the property because the trustee estimates that the total amount owed to lienholders is $386,918.32. Therefore, grounds for the sale have not been shown under 11 U.S.C. §363(f)(3).

There is no bona fide dispute about the Secured Creditor's interest in the subject property and the trustee's motion does not allege that there is a bona fide dispute. Therefore, grounds for the sale have not been shown under 11 U.S.C. §363(f)(4).

Because the amount of the debt owed to the Secured Creditor far exceeds the proposed sale price, as discussed above, the proceeds of the proposed sale would clearly not be sufficient to give the Secured Creditor a money satisfaction of its interest. Therefore, grounds for the sale have not been shown under 11 U.S.C. §363(f)(5).

The trustee has not shown that any of the grounds enumerated in 11 U.S.C. §363(f)(1)-(5) exist to allow the proposed sale under 11 U.S.C. §363(b) to occur. Therefore, the motion must be denied.

### 2. The Proposed Trustee's Sale Is Not Supported By An Appraisal

The trustee has requested that he be permitted to sell the subject property for $420,000.00. However, he has not supported that sale price with an appraisal. Instead, the only evidentiary support is a BPO. If this court is at all inclined to grant the trustee's motion even though Secured Creditor does not consent to the sale, the court should first require the trustee to conduct an appraisal and give Secured Creditor time to have its own appraisal done as well.

### 3. The Trustee's Plan To Hold Sale Proceeds In Trust Pending A "Determination Of Ownership" Is Indicative Of Bad Faith

In paragraph 27 of the motion, the trustee states that sale proceeds will "be held in trust pending a determination of ownership." The trustee would then either file an adversary proceeding or disburse the proceeds if he is convinced within 90 days after sale that the Secured Creditor has a valid claim. Those intended actions are indicative of bad faith because there is no bona fide dispute about the Secured Creditor's interest in the subject property and the trustee's motion does not allege that there is a bona fide dispute.

### 4. The Distribution Of Proceeds Is Unclear, And The Trustee's Proposed Surcharge Is Unacceptable And Unwarranted

The proposed distribution of proceeds to the Secured Creditor in the motion is vague, at best and it is unclear exactly how much the Secured Creditor would receive from the proceeds of the proposed sale. The trustee is attempting to sell the property for $420,000.00, but $33,081.68 of that amount will go toward settlement charges which will include broker

commissions. The trustee will then "carve out" an additional $24,250.00. Half of that "carve-out" will be paid to unsecured creditors and the other half will pay the trustee's fees. But, the trustee has also requested that he be permitted a surcharge in an undetermined amount on the sale proceeds for "necessary and reasonable expenses/costs, whether arising before or after Sale…including but not limited to attorney's fees and expenses related to or arising from administering the Property or the Proceeds (including all actions to investigate and determine lien validity), realtor fees and expenses, and accountant fees and expenses." *Motion*, 8:24-28.

Besides the completely indefinite and open-ended nature of the requested surcharge, which is apparently separate from the $24,250.00 statutory maximum which the trustee plans on retaining, it is also unclear why the trustee is seeking to recover expenses to investigate a lien claim where no dispute even exists, in addition to the various other surcharge items. The trustee's surcharge should be disallowed in its entirety.

The motion simply does not confer any benefit on the estate and appears to have been filed simply as a way to drum up business for the trustee.

5. **Pursuant To 11 U.S.C. §363(k), The Secured Creditor Should Be Given The Opportunity To Bid On The Subject Property, Assuming The Proposed Sale Were Otherwise Permissible**

11 U.S.C. §363(k) states:

> At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

The trustee is attempting to sell the subject property under 11 U.S.C. §363(b). Assuming the proposed sale were otherwise permissible, 11 U.S.C. §363(k) would give the Secured Creditor the right to bid (and, if the Secured Creditor were to become the purchaser,

to offset its claim against the purchase price) at a sale under Section 363(b), unless the Court for cause orders otherwise.

The trustee has not shown cause why the Secured Creditor should be deprived of its right to bid on the subject property. By allowing the trustee to sell the subject property as he has proposed, the Secured Creditor would be deprived of the opportunity to bid on the property in violation of 11 U.S.C. §363(k). Before the Secured Creditor bids on the property, the Court should continue the matter to allow the Secured Creditor time to conduct an appraisal.

6. **The Trustee Has Failed To Explain Why A Benefit Should Be Conferred Upon The Trustee To The Detriment Of The Secured Creditor**

There is no dispute about the lack of equity in the subject property and there is no equity in the subject property for the bankruptcy estate to lay claim to.

Notwithstanding the clear lack of equity in the subject property, the trustee is seeking to retain for himself $24,250.00 plus an additional unspecified amount, while the Secured Creditor would be expected to take far less than the amount owed to it, even though there is no dispute that the Secured Creditor holds a first position lien on the subject property. Thus, the proposed transfers to the trustee, to the detriment of the Secured Creditor, are yet another reason why the motion should be denied.

7. **Secured Creditor Has Already Obtained Relief From The Automatic Stay**

The Secured Creditor has already obtained relief from the automatic stay in regards to this property. The debtor is delinquent on his repayment of the loan owed to the Secured Creditor. Thus, foreclosure proceedings are imminent and the trustee's attempt to sell the subject property is nothing more than an attempt to interfere with the Secured Creditor's rights to hold its own foreclosure sale.

8. **Any Lien That The HOA Might Have, Is Not Superior To The Secured Creditor**

In his motion, the trustee states that he has obtained consent from the homeowners association ("HOA") and further states that the HOA is the most senior lienholder. However, the trustee has failed to provide a certified copy (or any copy) of a recorded lien and has also not provided any evidentiary support that the HOA has properly recorded a lien on the subject property. Even if the HOA does have a recorded lien, the trustee provides no substantive legal arguments that that lien would enjoy priority of the Secured Creditor's interest in the property.

NRS 116.3116 states that an homeowners associations lien for unpaid assessments is "prior to all other liens and encumbrances on a unit except...[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent[.]" *See*, NRS 116.3116(2).

The homeowners associations lien also enjoys a super priority over first security deeds, but only for "the assessments for common expenses...which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien[.]" Id.

In this case, the Secured Creditor's interest in the property is a result of a first deed of trust. On the other hand, any interest that the proposed buyer will have in the property will be pursuant to a HOA lien. Thus, pursuant to NRS 116.3116(2), the first deed of trust remains in senior position after the HOA's sale and the proposed buyer's interest in the property is subject to the first deed of trust. The proposed buyer will not obtain the property free and clear of all liens. The proposed buyer's interest in the property will be subject to and junior to the Secured Creditor's interest. The proposed buyer is not entitled to any interests above what

he purchased. If the sale is finalized, the buyer will have purchased a junior interest in the property and that interest is subject to being wiped out if it does not stay current on payment obligations to the Secured Creditor and the Secured Creditor completes a foreclosure sale.

The trustee's position in this matter would result in absurd and unreasonable results in this case, as well as many other cases in the weak economy that we are currently faced with. His position is contrary to the plain language of NRS 116.3116.

The HOA's "super lien" status applies when the mortgagee (the Secured Creditor in this case) acquires title from the homeowner/borrower (the debtor in this case) and there are amounts outstanding. If the association or a third party (the proposed buyer in this case) obtains title via a HOA sale then the mortgagee is still entitled to foreclose. The first mortgage does not simply vanish into thin air. The mortgagee can still foreclose against the new third party owner. Usually the new third party owner makes arrangements to refinance the property or assume the obligations under the Note when this happens. Thus, if a third party purchases property at a HOA sale, that third party continues to bear responsibility for payment of outstanding debt. The bank cannot force the third party purchaser to pay the mortgage, but can certainly foreclose and acquire title to the property if the mortgage payments are not made. The third party purchaser bears responsibility for any obligations that were not foreclosed by the HOA.

NRS 116.3116 clearly allows a HOA to have a super-priority lien and to commence foreclosure proceedings for unpaid assessments. However, the legislature clearly did not intend for the super-priority lien to entirely wipe out a first deed of trust. If the legislature intended the HOA to have full priority over a first deed of trust, then the statute would simply state, "A lien under this section is prior to all other liens and encumbrances on a unit."

Instead, the statute goes on to state, "except…a first security interest[.]" The purpose of the super-priority lien is to provide some monies to the HOA for unpaid assessments after a foreclosure conducted by the mortgagee.

If the trustee's position were right, then the legislature would have added a right of redemption to allow holders of first security deeds the ability to redeem the property by curing the arrears after the HOA foreclosure. This purpose and need for a right of redemption is already evident in other scenarios where a first security deed is at risk of being wiped out, such as in unpaid real estate taxes, special improvement districts, and local improvement districts. The rationale is the same: allow the senior lienholders the opportunity to protect their security interest by curing, redeeming, and retaining the property. The legislature already provides this opportunity where a lienholder is at risk of losing its security interest after a sale for unpaid real estate taxes, special improvement districts, and local improvement districts. *See*, NRS 361.570 and NRS 271.595.

NRS 116 is part of the Uniform Common Interest Ownership Act ("UCIOA"). The UCIOA's super priority provision was intended to strike a balance between the interests of existing lienholders and homeowners associations. According to the UCIOA drafters' comments, "A significant departure from existing practice, the 6 months priority for the assessment lien strikes an equitable balance between the need to enforce collection of unpaid assessments and ***the obvious necessity for protecting the priority of the security interests of lenders***." Unif. Common Interest Ownership Act (1982) §3-116, cmt. 1 (emphasis added).

In fact, one commentator asserts, "it would be folly to ignore the needs of mortgage lenders" since their investments are crucial to homeowners' associations. *James L. Winokur*, "Meaner Lienor Community Associations: The "Super Priority" Lien And Related Reforms

TIFFANY & BOSCO, P.A.
212 S. Jones Blvd
Las Vegas NV 89107
Tel (702) 258-8200 Fax (702) 258-8787

Under The Uniform Common Interest Ownership Act", 27 Wake Forest L. Rev., 353, 359 (1992).

The result advocated by the trustee would ignore the needs or mortgage lenders, would not be equitable, and would not protect the priority of the security interests of lenders.

Furthermore, the position advocated by the trustee is opposite those of at least two commentators that have recently engaged in in-depth research regarding super-priority liens in weak economies, such as ours. *See, Daniel Goldmintz*, "Lien Priorities: The Defects Of Limiting The 'Super Priority' For Common Interest Communities", 33:1 Cardoza L. Rev., 267 (2011); and *Casey Perkins*, "Privatopia In Distress: The Impact Of The Foreclosure Crisis On Homeowners' Associations", 10 Nev. L. J. 561 (2010). These commentators argue that the super-priority provision provides little value in situations where the home is worth less than the primary mortgage and thus, while there are some protections, the provisions are nonetheless insufficient in the face of today's challenges. *See, Perkins,* supra at 569-570. Their proposal is, among other things, that the "limited super-priority should be abolished and associations should be given full priority over mortgagees[.]" *See, Goldmintz,* supra at 289; and *Perkins*, supra at 580.

These commentators recognize that their proposal, and the parallel position taken by the trustee, would require a change in law and therefore legislative action would be needed to amend the current statutes. Nevada already undertook action in which to better provide for HOA assessments. In 2009, the Nevada legislature extended the super-priority provision to 9 months, rather than 6 months. *See,* Assembly Bill 204, 2009 Leg., 75th Sess. (Nev. 2009). Initially the bill would have extended the super-priority provision to 24 months, but was

ultimately only extended to 9 months. *See,* Assembly Bill 204, 2009 Leg., 75th Sess. (Nev. 2009) (as introduced).

The current super-priority provision works better in a healthy economy where a HOA foreclosure would result in enough funds to significantly pay the lender and allow the purchaser to continue to pay or refinance the Note in first position. But with the downturn in the economy, the Nevada legislature recognized that the statute did not give adequate protection to HOA so they proposed to increase the super-priority to 24 months, but ultimately only increased it to 9 months. This begs the question: If the trustee's position of unequivocal senior priority is correct, why would the legislature increase it to 9 months rather than just leave it at 6 months? This court should recognize the legislative efforts that have already been undertaken to help rectify this situation. If further efforts are needed, it is the responsibility of the legislature to address them; it is not this court's responsibility.

## II.
## CONCLUSION

WHEREFORE, based on the foregoing, the Secured Creditor respectfully requests that the motion to sell assets of the estate free and clear of liens and encumbrances and to surcharge proceeds of sale from the real property be denied in its entirety.

DATED this 26 day of April 2013.

TIFFANY & BOSCO, P.A.

/s/ Gregory L. Wilde, Esq.
GREGORY L. WILDE, ESQ.
Nevada Bar No. 4417
MATTHEW K. SCHRIEVER, ESQ.
Nevada Bar No. 10745
212 S. Jones Blvd
Las Vegas NV 89107
Attorney for Secured Creditor

**TIFFANY & BOSCO, P.A.**
Gregory L. Wilde, Esq.
Nevada Bar No. 004417
212 South Jones Boulevard
Las Vegas, Nevada 89107
Telephone: 702 258-8200
Fax: 702 258-8787

The Bank of New York Mellon FKA The Bank of New York, as trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass Through Trust 2006-HYB3, Mortgage Pass-Through Certificates, Series 2006-HYB3
12-78430

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| In Re: | BK-11-19760-bam |
| Angela Theresa Gleich | Chapter 7 |
| Debtor. | |

## CERTIFICATE OF MAILING

1. On April 26, 2013 I served the following document(s):

**OPPOSITION TO TRUSTEE'S MOTION TO SELL ASSETS OF THE ESTATE FREE AND CLEAR OF LIENS AND ENCUMBRANCES AND TO SURCHARGE PROCEEDS OF SALE – REAL PROPERTY**

2. I served the above-named document(s) by the following means to the persons as listed below:

X   a. ECF System

    Patterson & Jennings, Ltd.
    mpatterson@pattersonjennings.com
    Attorney for Debtor

    David A. Rosenberg
    darosenberg@7trustee.net
    Trustee

X   **b. United States mail, postage fully prepaid:**

Patterson & Jennings, Ltd.
3127 East Warm Springs Road
Suite 100, Bldg. 6
Las Vegas, NV 89120
Attorney for Debtor

Angela Theresa Gleich
3240 Santolina Drive
Las Vegas, NV  89135
Debtor

☐ **c. Personal Service**

I personally delivered the document(s) to the persons at these addresses:

☐   1.   For a party represented by an attorney, delivery was made by handing the document(s) to the attorney's office with a clerk or other person in charge, or if no one is charge by leaving the document(s) in a conspicuous place in the office.

☐   2.   For a party, delivery was made by handing the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

☐ **d. By direct mail**

Based upon the written assignment of the parties to accept service by email or a court order. I caused the document(s) to be sent to the persons at the mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ **e. By fax transmission**

Based upon the written assignment of the parties to accept service by fax transmission or a court order. I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐ **f. By messenger**

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

**I declare under penalty of perjury that the foregoing is true and correct.**

DATED this 26th day of April, 2013.

By: *[signature]*