GREGORY L. WILDE, ESQ.
Nevada Bar No. 4417
MATTHEW K. SCHRIEVER, ESQ.
Nevada Bar No. 10745
TIFFANY & BOSCO, P.A.
212 S. Jones Blvd.
Las Vegas NV 89107
Tel (702) 258-8200
Fax (702) 258-8787
nvbk@tblaw.com

The Bank of New York Mellon FKA The Bank of New York, as trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass Through Trust 2006-HYB3, Mortgage Pass-Through Certificates, Series 2006-HYB3
*Attorney for Secured Creditor*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>ANGELA T. GLEICH,<br><br>Debtor. | Case No. BK-S-11-19760-LED<br>Chapter 7<br><br>Hearing Date: November 7, 2013<br>Hearing Time: 11:00 a.m. |

### OPPOSITION TO TRUSTEE'S MOTION TO SELL FREE AND CLEAR OF LIENS AND ENCUMBRANCES OR, IN THE ALTERNATIVE, MOTION TO SELL SUBJECT TO ANY AND ALL LIENS AND ENCUMBRANCES – REAL PROPERTY

COMES NOW The Bank of New York Mellon FKA The Bank of New York, as trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass Through Trust 2006-HYB3, Mortgage Pass-Through Certificates, Series 2006-HYB3 (hereinafter "Secured Creditor"), by and through its attorney of record, the law firm of Tiffany & Bosco, P.A., and hereby files this opposition to the trustee's motion to sell free and clear of liens and encumbrances or, in the alternative, motion to sell subject to any and all liens and encumbrances for the real property located at 3240 Santolina Drive, Las Vegas, NV 89135.

This Opposition is made and based upon the pleadings and papers on file herein, the Memorandum of Points and Authorities that follows, any attached exhibits, and any oral argument the court permits at the hearing of this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.
### ARGUMENT

1. **The Power Of Sale Under 11 U.S.C. §363(b) Is Constrained By 11 U.S.C. §363(f), And The Requirements Of 11 U.S.C. §363(f) For The Proposed Sale Have Not Been Satisfied**

11 U.S.C. §363(b) gives trustees the power to sell property in cases where a secured party withholds consent to a sale even though the proceeds would be sufficient to satisfy the secured creditor's claim. However, 11 U.S.C. §363 does not allow debtors or trustees to force a secured creditor to accept less than the value of the secured creditor's interest in the secured property.

The sale powers under 11 U.S.C. §363(b), on which the motion is based, are constrained by 11 U.S.C. §363(f), which states:

> **The trustee may sell property under subsection (b)** or (c) **of this section** free and clear of any interest in such property of an entity other than the estate, **only if—**
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

(Emphasis added.)

TIFFANY & BOSCO, P.A.
212 S. Jones Blvd
Las Vegas NV 89107
Tel (702) 258-8200 Fax (702) 258-8787

The trustee has not identified any nonbankruptcy law in his motion which would permit the sale of the subject property by the trustee free and clear of the Secured Creditor's interest. Therefore, grounds for the sale have not been shown under 11 U.S.C. §363(f)(1).

The Secured Creditor clearly has not consented, and does not consent, to the proposed sale. Even if the Secured Creditor had failed to oppose this motion, that failure could not be construed as implied consent to the sale. In *In re Roberts*, 249 B.R. 152 (W.D. Mich. 2000), the court went through an exhaustive analysis of the legislative history, prior case law, the language of both 11 U.S.C. §363(f)(2) and 363 U.S.C. §363(c)(2), as well as the juxtaposition of the terms "consents" and "after notice and a hearing" in those two (2) statutes. That court ultimately held that the consent requirement contained in 11 U.S.C. §363(f)(2) obligates the trustee to approach the lienholder and secure the lienholder's assent if the trustee wishes to sell the property free and clear of the lien. *Id.* The court further stated that such consent may not be implied by the lienholder's failure to object. *Id.* The *Roberts* court stated:

> There is no indication within Section 363 itself or its underlying legislative history that Congress intended "consents" to have any meaning other than that which it is commonly understood to have. "Consent," when used as a verb, means "to give assent or approval." *Webster's* Third New International Dictionary (unabridged) (1986).
>
> Trustee and Huntington have relied upon the legal artifice of implied consent to meet the requirement of Section 363(f)(2). However, their argument in reality is that "consents" and "fails to object" are synonymous. They are not. When a person consents to a particular action, that person has unequivocally manifested his or her affirmation of the proposed action through some discernable statement or act. In contrast, when a person fails to object to a proposed action, that person's affirmation can only be deduced from the lack of any statement or act which would suggest a contrary position. Obviously, such deductive reasoning always leaves open the possibility that the person's failure to object is attributable to some reason totally unrelated to that person's actual consent to the proposed act. For example, in the context of mass mailings to the creditor matrix, the person may have

mistaken an important notice for junk mail and tossed it into the trash without even have read it.

Had Congress substituted "does not object" for "consents" in Section 363(f)(2), there would be no question that the lienholder had the obligation to act if it did not want the property to be sold free and clear of its lien. However, the concept of consent (i.e., to give assent) imposes no such duty upon the lienholder. To the contrary, "consent" obligates the trustee to approach the lienholder and secure the lienholder's assent if the trustee wishes to sell the property free and clear of the lien.

*In re Roberts*, 249 B.R. 152 (W.D. Mich. 2000). In this matter, the debtor do not have the Secured Creditor's consent or assent to sale the property free and clear of liens. In fact, the debtor does not have consent or assent from any of the other junior creditors either. The motion was filed prematurely because consent was not obtained. Because consent was not obtained, the court cannot grant the motion even if it were unopposed. Therefore, grounds for the sale have not been shown under 11 U.S.C. §363(f)(2).

The proposed sale price of $427,000.00 is not greater than the aggregate value of all liens on the property because the trustee estimates that the total amount owed to lienholders is $342,716.64. Therefore, grounds for the sale have not been shown under 11 U.S.C. §363(f)(3).

There is no bona fide dispute about the Secured Creditor's interest in the subject property and the trustee's motion does not allege that there is a bona fide dispute. Therefore, grounds for the sale have not been shown under 11 U.S.C. §363(f)(4).

Because the amount of the debt owed to the Secured Creditor far exceeds the proposed sale price, as discussed above, the proceeds of the proposed sale would clearly not be sufficient to give the Secured Creditor a money satisfaction of its interest. Therefore, grounds for the sale have not been shown under 11 U.S.C. §363(f)(5).

The trustee has not shown that any of the grounds enumerated in 11 U.S.C. §363(f)(1)-(5) exist to allow the proposed sale under 11 U.S.C. §363(b) to occur. Therefore, the motion must be denied.

**2.    The Proposed Trustee's Sale Is Not Supported By An Appraisal**

The trustee has requested that he be permitted to sell the subject property for $427,000.00. However, he has not supported that sale price with an appraisal. If this court is at all inclined to grant the trustee's motion even though Secured Creditor does not consent to the sale, the court should first require the trustee to conduct an appraisal and give Secured Creditor time to have its own appraisal done as well.

**3.    The Trustee's Plan To Hold Sale Proceeds In Trust Pending A "Determination Of Ownership" Is Indicative Of Bad Faith**

In the motion, the trustee states that sale proceeds will "be held in trust pending a determination of ownership." The trustee would then either file an adversary proceeding or disburse the proceeds if he is convinced within six (6) months after sale that the Secured Creditor has a valid claim. Those intended actions are indicative of bad faith because there is no bona fide dispute about the Secured Creditor's interest in the subject property and the trustee's motion does not allege that there is a bona fide dispute.

**4.    The Distribution Of Proceeds Is Unclear, And The Trustee's Proposed Surcharge Is Unacceptable And Unwarranted**

The proposed distribution of proceeds to the Secured Creditor in the motion is vague, at best and it is unclear exactly how much the Secured Creditor would receive from the proceeds of the proposed sale. The trustee is attempting to sell the property for $427,000.00, but $29,873.19 of that amount will go toward settlement charges which will include broker commissions. The trustee has not explained why the brokers should receive the benefit of a

commission to the detriment of the Secured Creditor. The trustee will charge the buyer a buyer's premium of 5% or $5,000.00. Half of that "buyer's premium" will be paid to unsecured creditors and the other half will pay the trustee's fees. The trustee has not explained why he would be entitled to a buyer's premium. If the buyer is willing to pay an additional 5% or $5,000.00, then those amounts (and the brokers' commissions) should be added to the purchase price which would provide additional proceeds to the Secured Creditor.

The motion simply does not confer any benefit on the estate and appears to have been filed simply as a way to drum up business for the trustee.

5. **The Trustee Has Failed To Explain Why A Benefit Should Be Conferred Upon The Trustee To The Detriment Of The Secured Creditor**

There is no dispute about the lack of equity in the subject property and there is no equity in the subject property for the bankruptcy estate to lay claim to.

Notwithstanding the clear lack of equity in the subject property, the trustee is seeking to retain for himself $5,000.00 or 5% and pay the brokers' commissions from the sale proceeds, while the Secured Creditor would be expected to take far less than the amount owed to it, even though there is no dispute that the Secured Creditor holds a first position lien on the subject property. Thus, the proposed payments to the brokers and the trustee, to the detriment of the Secured Creditor, are yet another reason why the motion should be denied.

6. **Secured Creditor Has Already Obtained Relief From The Automatic Stay**

The Secured Creditor has already obtained relief from the automatic stay in regards to this property. The debtor is delinquent on her repayment of the loan owed to the Secured Creditor. Thus, foreclosure proceedings are imminent and the trustee's attempt to sell the subject property is nothing more than an attempt to interfere with the Secured Creditor's rights to hold its own foreclosure sale.

7. **The Trustee's Alternative Motion To Sell Subject To Any And All Liens And Encumbrances Is Premature**

The trustee alternatively hopes to sell the subject property subject to any and all liens and encumbrances, but the motion has been filed prematurely as it does not include an approval letter from Secured Creditor. Section 13 of the Deed of Trust states that the Secured Creditor must provide its prior approval before there is a transfer of interest from the borrower to a new party. Furthermore, the Deed of Trust also states that if there is a transfer of interest without the Secured Creditor's prior written consent, then it can accelerate the loan and require immediate payment in full of all outstanding sums. In this case, the Secured Creditor has not provided its prior written approval and the trustee's motion does not inform potential new purchasers that they may be required to immediately pay all outstanding sums. The Secured Creditor must first provide prior written approval prior to any sale closing and the trustee must comply with any and all conditions set forth by Secured Creditor. This motion to sell real property should not have been filed until after the trustee receives that approval letter from the Secured Creditor.

In order for a bankruptcy court to approve a motion to sell pursuant to §363(b), the trustee must show a legitimate business justification. *See, In re GSC, Inc.*, 453 B.R. 132, 155-56 (Bankr. S.D.N.Y., 2011); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983).

In this matter, the trustee has not provided any legitimate business justification for a sale of the property subject to all liens. The trustee simply references that "the Estate and the Debtor shall be forever freed of the Property." However, the appropriate course of action for the trustee to free the estate and the debtor of the property is abandonment and surrender. *In re Williamson*, 94 B.R. at 962-963. The trustee should do abandon the property instead of burdening the court and creditors with fruitless motions.

Finally, Secured Creditor has concerns about the potential uncertainty of other issues if the sale is granted subject to all liens and encumbrances. For instance, the Secured Creditor might be required to re-notice a Notice of Default and/or a Notice of Sale to provide statutory notice to the purchasers of their right to elect mediation. Yet, to require the Secured Creditor to participate in a mediation with an entity that purchased title to the property for a few thousand dollars would be a highly unjust and fruitless exercise, yet substantially quite expensive for the Secured Creditor. Furthermore, Secured Creditor would also be at risk of the purchaser quickly filing its own bankruptcy in an attempt to cram down the loan, which is increasingly happening with purchasers of HOA liens. Any business justification that the trustee might be able to show is quickly outweighed by the risks, uncertainty, and costs to the Secured Creditor.

As such, this court should also deny the trustee's alternative relief to sell the property subject to all liens and encumbrances.

## II.
## CONCLUSION

WHEREFORE, based on the foregoing, the Secured Creditor respectfully requests that the motion to sell free and clear of liens and encumbrances or, in the alternative, motion to sell subject to any and all liens and encumbrances be denied in its entirety.

DATED this 17 day of October 2013.

**TIFFANY & BOSCO, P.A.**
/s/ Gregory L. Wilde, Esq.
GREGORY L. WILDE, ESQ.
Nevada Bar No. 4417
MATTHEW K. SCHRIEVER, ESQ.
Nevada Bar No. 10745
212 S. Jones Blvd
Las Vegas NV 89107
Attorney for Secured Creditor

**TIFFANY & BOSCO, P.A.**
Gregory L. Wilde, Esq.
Nevada Bar No. 004417
212 South Jones Boulevard
Las Vegas, Nevada 89107
Telephone: 702 258-8200
Fax: 702 258-8787

The Bank of New York Mellon FKA The Bank of New York, as trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass Through Trust 2006-HYB3, Mortgage Pass-Through Certificates, Series 2006-HYB3
12-78430

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| In Re: | BK-11-19760-bam |
|---|---|
| Angela Theresa Gleich | Chapter 7 |
| Debtor. | |

### CERTIFICATE OF MAILING

1. On October 18, 2013 I served the following document(s):

   **OPPOSITION TO TRUSTEE'S MOTION TO SELL FREE AND CLEAR**

2. I served the above-named document(s) by the following means to the persons as listed below:

   X   a. ECF System

   Patterson & Jennings, Ltd.
   mpatterson@pattersonjennings.com
   Attorney for Debtor

   David A. Rosenberg
   darosenberg@7trustee.net
   Trustee

    X  **b. United States mail, postage fully prepaid:**

        Patterson & Jennings, Ltd.
        3127 East Warm Springs Road
        Suite 100, Bldg. 6
        Las Vegas, NV 89120
        Attorney for Debtor

        Angela Theresa Gleich
        3240 Santolina Drive
        Las Vegas, NV  89135
        Debtor

    ☐  **c. Personal Service**

I personally delivered the document(s) to the persons at these addresses:

    ☐  1.    For a party represented by an attorney, delivery was made by handing the document(s) to the attorney's office with a clerk or other person in charge, or if no one is charge by leaving the document(s) in a conspicuous place in the office.

    ☐  2.    For a party, delivery was made by handing the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

    ☐  **d. By direct mail**

Based upon the written assignment of the parties to accept service by email or a court order. I caused the document(s) to be sent to the persons at the mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

    ☐  **e. By fax transmission**

Based upon the written assignment of the parties to accept service by fax transmission or a court order. I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐ **f. By messenger**

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

**I declare under penalty of perjury that the foregoing is true and correct.**

DATED this 18th day of October, 2013.

By: /s/ Jennifer L. Ferran